IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
WICHITA DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>JUSTIN F. TERRAZAS and CLAUDALE M. ARTERBURN, as Guardian and Conservator of BRIAN D. ARTERBURN, an adult with an impairment,<br><br>Defendants. | Case No. 6:19-CV-1275 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

**COMES NOW** Plaintiffs Zurich American Insurance Company ("ZAIC") and American Guarantee and Liability Insurance Company ("AGLIC"), by and through their undersigned counsel, state as follows for their Complaint for Declaratory Judgment:

**INTRODUCTION**

1. This action seeks a declaratory judgment that Justin F. Terrazas ("Terrazas") did not qualify as "an insured" as defined by the primary and umbrella policies of insurance issued by ZAIC and AGLIC to Eddy's Toyota of Wichita, Inc. Thus, Terrazas is not covered for any damages he may be legally obligated to pay as a result of an accident which occurred while Terrazas was operating a vehicle owned by Eddy's Chevrolet Cadillac, LLC ("Eddy's Chevy").

**THE PARTIES**

2. At all relevant times, ZAIC was a New York insurance company authorized to issue policies of insurance in Kansas. ZAIC's principal place of business is in Schaumburg, Illinois.

1

3. At all relevant times, AGLIC was a New York insurance company authorized to issue policies of insurance in Kansas. AGLIC's principal place of business is in Schaumburg, Illinois.

4. Justin Terrazas ("Terrazas") is an inmate in the custody of the Kansas Department of Corrections and imprisoned at the time of filing this Complaint in the Larned Correctional Mental Health Facility. His inmate number is KDOC #0087952, and he may be served at Larned Correctional Mental Health Facility, 1318 KS Highway 264, Larned, KS 67550-0280.

5. Claudale M. Arterburn and Brian D. Arterburn are Kansas citizens residing in Sedgwick County, Kansas.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1332 and 2201. This action involves a declaratory judgment between citizens of different states. The amount in controversy also exceeds $75,000, whether viewed from the perspective of the plaintiff or the defendants. Defendant Officer Arterburn's projected life care plan for injuries sustained in the accident at issue are allegedly in excess of $16 million. The cost to ZAIC of having to defend Terrazas against Officer Arterburn's civil claims will exceed $75,000.

7. Venue is proper because ZAIC's and AGLIC's policies of insurance were delivered in Kansas for the benefit of the Wichita-based Named Insureds identified therein. Terrazas, as an inmate at the Larned Correctional Mental Health Facility, is within this district. The events that are the subject of the underlying civil lawsuit occurred in Wichita, Kansas.

## FACTUAL BACKGROUND

8. On February 7, 2017, Eddy's Chevy was the registered owner of a 2016 Black Chevy Tahoe ("Chevy Tahoe") with Dealer Tag D647FN.

9. On February 7, 2017, police officers observed Terrazas driving the Chevy Tahoe.

10. Police Officers followed Terrazas because the Chevy Tahoe had been reported as stolen.

11. Terrazas, while driving the Chevy Tahoe, after it had be reported stolen, hit, and ran over Officer Arterburn as Terrazas tried to flee police.

12. In conjunction with the above-described events, Terrazas pled guilty to the following crimes:

(a) Possession of Methamphetamine with Intent to Distribute, a Drug-Grid Level 2 offense; and

(b) Aggravated battery – intentionally or recklessly caused great bodily harm, a Non-Drug Grid Level 5 offense.

13. Terrazas is not eligible for parole until August 5, 2050.

14. Terrazas has never been an employee of any company included as a Named Insured in the Policies for Eddy's Chevy: neither Moxie Motors, LLC ("Moxie"); Steven Enterprises, LLC ("Steven Enterprises"); nor Brandon Steven Motors, LLC ("BSM").

15. Terrazas did not have permission from any Named Insured(as defined by the Policies) to operate, use, or otherwise possess the Chevy Tahoe that was involved in the above-described events.

16. Claudale M. Arterburn, as guardian and conservator of Officer Arterburn, has filed a civil lawsuit styled *Arterburn ex rel. Arterburn v. Eddy's Chevrolet Cadillac, LLC*, Case No. 18 CV 683 in Sedgwick County District Court (the "Underlying Lawsuit"). In this lawsuit Claudale Arterburn seeks a judgment for monetary damages against Terrazas.

17. Currently, ZAIC is defending Terrazas in the Underlying Lawsuit under a

reservation of rights.

## THE POLICIES

18. ZAIC issued a commercial package policy of insurance to Named Insured Eddy's Toyota of Wichita, Inc. bearing Policy Number ADM 0160609-00 for the policy period beginning December 1, 2016 and ending December 1, 2017 (the "Primary Policy"). A true and accurate copy of the Primary Policy is attached hereto as **EXHIBIT A**.

19. AGLIC also issued a Commercial Umbrella Liability Policy to Named Insured Eddy's Toyota of Wichita, Inc. bearing Policy No. AUC 0164150-00 for the policy period beginning December 1, 2016 and ending December 1, 2017 (the "Umbrella Policy"). A true and accurate copy of the Umbrella Policy is attached hereto as **EXHIBIT B**.

### I. The Primary Policy

20. The Primary Policy has the following Named Additional Insureds: Eddy's Toyota of Wichita, Inc., Moxie Motors, LLC; Eddy's Volvo of Wichita; Eddy's Chevrolet Cadillac; Eddy's Vow, LLC, Eddy's Volvo Cars of Wichita; Ford of Augusta, Inc.; Eddy's Ford of Augusta; Eddy's MLS, LLC; Mazda of Lee's Summit; Eddy's Motors, LLC; and Eddy's Independent Group. (Ex. A at Form U-GU-621-A CW (10/02); Form U-GU-614-A CW (10/02)).

21. The Primary Policy has a $1,000,000 each accident limit of insurance applicable to Covered Autos Liability ("Auto Liability"). (*Id.* at Form U-CA-D-803-B CW (02/16), p. 2).

22. The insuring agreement for the Auto Liability coverage of the Primary Policy provides:

> …
>
> Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations … The words "we",

> "us" and "our" refer to the company providing this insurance.
>
> …
>
> **D. Covered Autos Liability Coverage**
>
> **1. Coverage**
>
>> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos".
>>
>> …
>>
>> We have the right and duty to defend any "insured" against a "suit" asking for such damages … However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" … to which this insurance does not apply. …

(*Id.* at Form CA 00 25 10 13, Covered Autos Liability Coverage, § I.D., p. 2). The Auto Liability coverage of the Primary Policy defines who is an "insured" to include, with certain exceptions, "anyone else while using with your permission a covered 'auto' you own, hire, or borrow …" (*Id.* at § I.D.2., p. 3). It is Defendants' contention that Terrazas is not an "insured" because he did not have permission of any kind from anyone to operate the Defendant's vehicle, and in particular, did not have the owner's permission, either express or implied.

23. The Auto Liability coverage of the Primary Policy defines what a "covered 'auto'" is in Section I.A., and provides:

> **A. Description Of Covered Auto Designation Symbols**
>
>> Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered

5

"autos".

| Symbol | Description Of Covered Auto Designation Symbols[1] |
|--------|---------------------------------------------------|
| 21     | Any "Auto"                                        |

(*Id.* at Covered Autos, § I.A., p. 1; Form U-CA-D-803-B CW (02/16), p. 2).

24.  The Auto Liability coverage of the Primary Policy includes the following Intentional Acts Exclusion applicable to auto liability claims:

> **4. Exclusions**
>   This insurance does not apply to any of the following:
>   **a. Expected Or Intended Injury**
>     "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

(*Id.* at Form CA 00 25 10 13, Exclusions, § I.D.4., p. 4).

**II.  The Umbrella Policy**

25.  The Umbrella Policy has a $10,000,000 per occurrence limit of insurance.  (Ex. B at Form U-UMB-D-191-C CW (03/10), p. 1).

26.  The Umbrella Policy's Coverage A Insuring Agreement provides as follows:

> **A. Coverage A – Excess Follow Form Liability Insurance**
>
> Under **Coverage A**, we will pay on behalf of the **insured** those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**.  With respect to **Coverage A**, this policy includes:
>
> **1.** The terms and conditions of **underlying insurance** to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph **2.** Below; and
>
> **2.** The terms and conditions that apply to **Coverage A** of this policy.

---

[1] The table only includes the descriptions for the Covered Auto Symbols that are relevant to the claims at issue in this action.

> Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of **loss**, then **Coverage A** does not apply to such damages. Also, **Coverage A** does not apply to any form of **casualty business crisis expense** insurance even if such insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance**.

(*Id.* at Form U-UMB-103-C CW (03/10), Insuring Agreements, § I.A., p. 1).

27. The Umbrella Policy's Coverage B Insuring Agreement provides:

> **B. Coverage B – Umbrella Liability Insurance**
>
> Under **Coverage B**, we will pay on behalf of the **insured** those damages the **insured** becomes legally obligated to pay by reason of liability:
>
> **1.** Imposed by law because of **bodily injury** …
>
> …
>
> covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy, and is caused by an **occurrence** happening anywhere. We will pay such damages in excess of the **Retained Limit** specified in Item **5.** of the Declarations or the amount payable by **other insurance**, whichever is greater.
>
> **Coverage B** does not apply to any **loss**, claim or **suit** for which insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance**.

(*Id.* at Form U-UMB-103-C CW (03/10), Insuring Agreements, § I.B., p. 1).

28. AGLIC has the "right and duty to assume control of the investigation and settlement of any claim or defense of any suit against the insured for damages covered by [the Umbrella Policy]" as follows:

> **1.** Under **Coverage A**, when the applicable limit of **underlying insurance** and **other insurance** has been exhausted by payment of **loss** for which coverage is afforded under this policy; or

7

> **2.** Under **Coverage B**, when damages are sought for **bodily injury** … to which no **underlying insurance** or **other insurance** applies.

(*Id.* at Form U-UMB-103-C CW (03/10), Defense and Supplementary Payments, § III.A., p. 3). However, "[i]n those circumstances where paragraph **A.** above does not apply, AGLIC "do[es] not have the duty to assume control of the investigation and settlement of any claim, or defense of any **suit** against the **insured**." (*Id.* at § III.D., p. 3).

29. The Umbrella Policy includes an Aircraft, Autos or Watercraft Exclusion, which excludes coverage under Coverage B for the following:

> 1. Any liability, damage, loss, cost or expense arising out of the ownership, maintenance, operation, use, loading or unloading or entrustment to others of any
>
> …
>
> **b. Auto** …
>
> This exclusion applies even if the claims against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **insured**.

(*Id.* at Form U-UMB-103-C CW (03/10), Exclusions, § IV.C.1., p. 7).

30. The Umbrella Policy includes an Intentional Acts Exclusion, which excludes coverage under Coverage B for "**[b]odily injury** … expected or intended from the standpoint of the **insured**. …". (*Id.* at Form U-UMB-103-C CW (03/10), Exclusions, § IV.C.4., p. 8).

31. The Umbrella Policy defines "loss" as follows:

> … those sums actually paid that the **insured** is legally obligated to pay as damages for the settlement or satisfaction of a claim because of injury or offense, after making proper deductions for all recoveries and salvage. However:
>
> **a.** Under **Coverage A**:
>
> **(1) Loss** also included defense expenses and supplementary payments if **underlying insurance** includes defense

>> expenses and supplementary payments in the Limits of Insurance; and
>
> **(2) Loss** does not include defense expenses and supplementary payments if **underlying insurance** does not include defense expenses and supplementary payments in the Limits of Insurance.
>
> **b.** Under **Coverage B**, **loss** does not include defense expenses and supplementary payments.

(*Id.* at Form U-UMB-103-C CW (03/10), Definitions, § V.A.3., p. 10).

32.     The Umbrella Policy defines "underlying insurance" as "the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy. [AGLIC] will only be liable for amounts in excess of the Limits of Insurance shown in the Schedule of Underlying Insurance for any **underlying insurance**." (*Id.* at Form U-UMB-103-C CW (03/10, Definitions, § V.A.7., p. 10).

33.     Under Coverage A of the Umbrella Policy, "insured," as modified by endorsement, means:   **a.** You; **b.** Any person or organization included as an **insured** in **underlying insurance** except that no one who uses or operates autos or watercraft owned, nonowned or hired by you are **insureds** except for you or a person designed in the Schedule in this endorsement; and **c.** Any person or organization qualifying as an additional **insured** in **underlying insurance** but only to the same extent that such person or organization is an additional **insured** under such **underlying insurance**." (*Id.* at Form U-UMB-103-C CW (03/10), Definitions, § V.B.2., p. 10; Form U-UMB-915-A CW (06/14), Revised Definition Of Insured Coverage A). The only designed individual in the Schedule is Brandon Stevens. (*Id.* at Form U-UMB-915-A CW (06/14), Revised Definition Of Insured Coverage A).

34.     Under Coverage A of the Umbrella Policy, "occurrence" means "a covered event as defined in **underlying insurance**." (*Id.* at Form U-UMB-103-C CW (03/10), Definitions, §

4840-5576-1063

V.B.4., p. 10).

35. Under Coverage B of the Umbrella Policy, "auto" means, in part, "[a] land motor vehicle … designed for travel on public roads …". (*Id.* at Form U-UMB-103-C CW (03/10), Definitions, § V.C.2., p. 11).

36. Under Coverage B of the Umbrella Policy, "insured" means, in part:

> …
>
> **d.** You, if you are a limited liability company shown in the Declarations. Your members are also **insureds**, but only with respect to the conduct of your business. Your managers are **insureds**, but only with respect to their duties as your managers;
>
> …
>
> **f.** Your **employees**, but only for acts within the scope of their employment by you[.]

(*Id.* at Form U-UMB-103-C CW (03/10), Definitions, § V.C.6., p. 11).

37. Under Coverage B, "named insured" means, in part, "[t]he person(s) or organizations(s) designated in Item **1.** of the Declarations of this policy …". (*Id.* at Form U-UMB-103-C CW (03/10, Definitions, § V.C.10., p. 12).

38. Under Coverage B, "occurrence" means, "[w]ith respect to **bodily injury** … liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at Form U-UMB-103-C CW (03/10), Definitions, § V.C.11.a., p. 13).

## COUNT I
### Declaratory Judgment (Auto Liability Coverage of Primary Policy)

39. ZAIC and AGLIC incorporate herein by reference Paragraphs 1 - 38 as though fully set forth herein.

40. ZAIC has no duty to defend or indemnify Terrazas under the Auto Liability coverage of the Primary Policy because Terrazas does not meet the terms and conditions to

10

qualify as an insured for the following reasons:

(a) Terrazas is not a Named Insured or a member of a Named Insured;

(b) Terrazas was not an employee of any Named Insured;

(c) Terrazas was not given permission to drive the Chevy Tahoe, by any Named Insured;

(d) No employee of any Named Insured was given permission to let Terrazas drive the Chevy Tahoe, and neither did Moxie;

(e) No employee of any Named Insured had permission to sell the Chevy Tahoe outside of the dealership's regular sales procedures and without a formal transfer of title.

(f) Driving the vehicle to a known drug house for the purpose of purchasing or selling illegal drugs and using the vehicle to flee police, is a major deviation from any alleged permission to use the Chevy Tahoe that Terrazas could have been given; (same being denied);

(g) Any permission Terrazas may have been given to use the Chevy Tahoe (same being denied) was revoked when a Named Insured reported the vehicle as stolen.

41. ZAIC has no duty to defend or indemnify Terrazas under the Auto Liability coverage of the Primary Policy because Officer Arterburn's bodily injuries were not the result of an "accident." Terrazas intentionally and knowingly fled police, and Terrazas pled guilty to intentional criminal wrongdoing that resulted in Officer Arterburn's injuries.

42. Even if Terrazas was an insured, ZAIC has no duty to defend or indemnify Terrazas under the Auto Liability coverage of the Primary Policy because of the Intentional Acts Exclusion. Terrazas intended to flee the police, and Terrazas' act of running over Officer

11

Arterburn with the vehicle was committed intentionally and/or was a natural and probable consequence of fleeing the police while driving at unsafe speeds.

43. Terrazas is not an "insured" as defined in the "Who Is An Insured" section, I.D.2., of the Primary Policy.

44. For all of the foregoing reasons, an actual controversy exists between the parties, which vests in the Court the power to declare the rights and liabilities of the parties.

## COUNT II
### Declaratory Judgment (Umbrella Policy)

45. ZAIC and AGLIC incorporate herein by reference Paragraphs 1 - 44 as though fully set forth herein.

46. There is no right or duty to assume control of the investigation, settlement, or defense of the Underlying Lawsuit, or to indemnify Terrazas for any damages that may be awarded in the Underlying Lawsuit under Coverage A of the Umbrella Policy because Terrazas does not meet the terms and conditions to qualify as an insured for the following reasons:

    (a)    Terrazas is not the Named Insured;

    (b)    Terrazas is not an insured in "underlying insurance";

    (c)    All individuals except Brandon Stevens who are operating autos owned by Eddy's Chevy, are excluded from the definition of "insureds" in the Umbrella Policy; and

    (d)    Terrazas is not an additional insured as defined in "underlying insurance."

47. There is no right or duty to assume control of the investigation, settlement, or defense of the Underlying Lawsuit, or to indemnify Terrazas for any damages that may be awarded in the Underlying Lawsuit under Coverage B of the Umbrella Policy because Terrazas does not meet the terms and conditions to qualify as an insured for the following reasons:

    (a)    Terrazas is not the Named Insured;

(b) Terrazas is not the Named Insured or any of its members or managers, and, furthermore, was not conducting the business of any Named Insured or any managerial duties at the relevant time; and

(c) Terrazas is not an employee of the Named Insured, and would not have been acting in the course and scope of employment at the relevant time even if he were.

48. There is no right or duty to assume control of the investigation, settlement, or defense of the Underlying Lawsuit, or to indemnify Terrazas for any damages that may be awarded in the Underlying Lawsuit under Coverage A of the Umbrella Policy because there was no covered event under "underlying insurance" for all the reasons set forth in Count I, *supra*.

49. There is no right or duty to assume control of the investigation, settlement, or defense of the Underlying Lawsuit, or to indemnify Terrazas for any damages that may be awarded in the Underlying Lawsuit under Coverage B of the Umbrella Policy because Officer Arterburn's bodily injuries were not the result of an "accident." Terrazas intentionally and knowingly fled police, and Terrazas pled guilty to intentional criminal wrongdoing that resulted in Officer Arterburn's injuries.

50. There is no right or duty to assume control of the investigation, settlement, or defense of the Underlying Lawsuit, or to indemnify Terrazas for any damages that may be awarded in the Underlying Lawsuit under Coverage B of the Umbrella Policy because of the Intentional Acts Exclusion. Terrazas intended to flee the police, and Terrazas' act of running over Officer Arterburn with the vehicle was committed intentionally and/or was a natural and probable consequence of fleeing the police while driving at unsafe speeds.

51. There is no right or duty to assume control of the investigation, settlement, or defense of the Underlying Lawsuit, or to indemnify Terrazas for any damages that may be

awarded in the Underlying Lawsuit under Coverage B of the Umbrella Policy because of the Aircraft, Autos or Watercraft Exclusion. Eddy's Chevy owned the Chevy Tahoe, and Officer Arterburn's injuries arose out of Eddy's Chevy's ownership of the Chevy Tahoe and any purported entrustment to Terrazas thereof.

52. For all of the foregoing reasons, an actual controversy exists between the parties, which vests in the Court the power to declare the rights and liabilities of the parties.

**WHEREFORE**, Plaintiffs Zurich American Insurance Company and American Guarantee and Liability Insurance Company respectfully request that this Court:

(a) Enter an order finding that ZAIC and AGLIC have no duty to defend Terrazas in, and no right to participate or control the defense and settlement of, the Underlying Lawsuit; and

(b) Enter an order finding that ZAIC and AGLIC have no duty to indemnify Terrazas against any judgment that may be entered against him in the Underlying Lawsuit or any settlement he may reach regarding the Underlying Lawsuit; and

(c) Provide such other and further relief as this Court deems just and proper.

Dated: October 15, 2019.

15

Respectfully submitted,

*/s/ Larry D. Fields*
Larry D. Fields                                KS #15753
Meredith A. Webster                  KS #25103
Kutak Rock LLP
2300 Main Street, Suite 800
Kansas City, MO 64108
(816) 960-0090
(816) 960-0041 Facsimile
larry.fields@kutakrock.com
meredith.webster@kutakrock.com
**ATTORNEYS FOR PLAINTIFFS ZURICH AMERICAN INSURANCE COMPANY AND AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY**