IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ZURICH AMERICAN INSURANCE
COMPANY and AMERICAN
GUARANTEE AND LIABLITY
INSURANCE COMPANY,

          Plaintiffs,

v.                                                              Case No. 19-1275-JTM-GEB

JUSTIN F. TERRAZAS and
CLAUDALE M. ARTERBURN, as
Guardian and Conservator of
BRIAN D. ARTERBURN, an adult
with an impairment,

          Defendants.

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Claudale M. Arterburn's Motion to Dismiss, or, in the Alternative, to Stay Plaintiffs' Complaint for Declaratory Judgment (Dkt. 14) and defendant Claudale M. Arterburn's Motion to Dismiss, or, in the Alternative, to Stay Plaintiffs' First Amended Complaint for Declaratory Judgment (Dkt. 23). As discussed in detail below, Arterburn's Motion to Dismiss the Complaint for Declaratory Judgment (Dkt. 14) is denied as moot. Arterburn's Motion to Dismiss the First Amended Complaint (Dkt. 23) is granted in part and denied in part.

**Procedural History**

Plaintiffs Zurich American Insurance Company (Zurich) and American Guarantee and Liability Insurance Company (American) filed a Complaint (Dkt. 1) on October 15, 2019 seeking a declaratory judgment that defendant Justin Terrazas does not qualify as

an "insured" under the primary and umbrella insurance policies issued by Zurich and American to non-party Eddy's Chevrolet Cadillac, LLC (Eddy's), a Wichita, Kansas car dealership. The factual circumstances relevant to the declaratory judgment overlap with a case pending in the Eighteenth Judicial District, Sedgwick County, Kansas, no. 18-cv-683, captioned *Arterburn v. Eddy's Chevrolet Cadillac, LLC, et al.*

Highly summarized, the pertinent facts are that Terrazas, an admitted drug dealer, was driving a black 2016 Chevrolet Tahoe on February 7, 2017, when that Tahoe became involved in a high-speed chase with the Wichita Police Department.  Central to the resolution of both cases is the question of how Terrazas came to be driving the Tahoe that day. The Tahoe had come into Eddy's possession in December, 2015, and a dealership employee noticed in mid-December 2016 that the vehicle, its dealer tag, and a set of keys for the vehicle were missing from the dealership. The Tahoe was not reported stolen, however, until February 7, 2017 after the Wichita Police Department contacted the dealership and notified it that the Tahoe was under surveillance. During the high-speed chase that occurred on February 7, 2017, Officer Brian Arterburn was involved with laying "stop sticks" in the path of the Tahoe. While Officer Arterburn was laying the stop sticks, the Tahoe swerved directly into him and ran over his head and torso, causing catastrophic injuries. The parties dispute whether Terrazas had permission to drive the Tahoe that day and whether Terrazas's conduct in driving the Tahoe into Officer Arterburn was intentional.

Terrazas ultimately pled guilty on November 14, 2018 to (reckless) aggravated battery of a law enforcement officer pursuant to KSA 21-5413(b)(2)(A) and possession

with the intent to distribute methamphetamine. (Dkt. 15-6). Officer Arterburn's spouse, Claudale, filed the aforementioned suit in Sedgwick County against Eddy's, Terrazas, Moxie Motors LLC, Steven Enterprises LLC, and Brandon Steven Motors, LLC. Arterburn's Second Amended Complaint in the Sedgwick County case asserts alternative claims against Eddy's either for negligent failure to secure and report regarding the status of the Tahoe, in the event that the Tahoe was stolen or otherwise taken from the dealership without consent, or for negligent entrustment of the Tahoe to Terrazas in the event the vehicle was furnished to Terrazas with Eddy's permission. The Second Amended Complaint also asserts claims against Terrazas directly for negligence as well as alter ego claims against the other named defendants and a claim for loss of consortium against all defendants. The Sedgwick County case has proceeded through discovery and motion practice, and is now set for jury trial to begin in October 2020. (*See* First Amended Scheduling Order, Dkt. 15-2). Zurich is defending Terrazas in the Sedgwick County action under a reservation of rights.

Plaintiffs' Complaint for Declaratory Judgment (Dkt. 1) requests a judgment that plaintiffs have no duty to defend or indemnify Terrazas in the Sedgwick County case and no right to participate in or control the progress of the Sedgwick County case under either the primary or umbrella policies. The Complaint advances a number of theories as to why plaintiffs are not obligated to defend or indemnify Terrazas. With respect to the primary policy, plaintiffs contend Terrazas was not a named insured or employee of a named insured, was not a permissive driver of the Tahoe, that no employee of Eddy's had permission to give or sell the Tahoe to Terrazas, that to the extent Terrazas had

permission to drive the Tahoe the acts that occurred on February 7, 2017 constituted a major deviation from that permission, and that any permission Terrazas had to drive the Tahoe was revoked when the vehicle was reported as stolen on February 7, 2017. Plaintiffs further contend that either there was no "covered event" because there was no accident, and that Terrazas's intentional conduct invokes the Intentional Acts Exclusion of the policy. As to the umbrella policy, plaintiffs make nearly identical claims that Terrazas was not a named insured, was not a named insured under the "underlying insurance" policy, was not an additional insured under the "underlying policy," was specifically excluded from the policy's definition of "insureds," that there was no covered event as there was no "accident," that Terrazas's intentional conduct invokes the Intentional Acts Exclusion, and that the Tahoe was an excluded automobile under the policy.

Arterburn filed a Motion to Dismiss, or in the Alternative, Stay (Dkt. 14) and Memorandum in Support (Dkt. 15) on December 13, 2019, arguing that the court should either decline to exercise jurisdiction over the matter due to the pending state court action, or that the court should stay its determination of the declaratory judgment until the conclusion of the state court action.  Arterburn then filed an Answer to the Complaint on December 16, 2019.

Shortly after their response to Arterburn's Motion to Dismiss and prior to any ruling on that Motion to Dismiss, Plaintiffs filed an Amended Complaint (Dkt. 19) on January 6, 2020. The Amended Complaint seeks declaratory judgment on the same grounds as the original Complaint, with one additional claim applicable to both policies:

that Terrazas's failure to cooperate in his defense relieves plaintiffs of their duty to defend Terrazas or otherwise participate in the underlying suit. Arterburn subsequently filed a Motion to Dismiss, or in the Alternative, to Stay the First Amended Complaint (Dkt. 23) which incorporated by reference arguments made in the first motion to dismiss. Arterburn contemporaneously filed what was styled a Reply Brief in Support of Defendant's Motion to Dismiss, or, in the Alternative, to Stay Plaintiffs' Complaint for Declaratory Judgment (Dkt. 24) which was docketed as a memorandum in support of Arterburn's Motion to Dismiss/Stay the Amended Complaint. The "Reply Brief" responds to the additional defense to coverage set forth in the Amended Complaint, lack of cooperation, and contends the addition of that defense did not impact any of the original arguments advanced in support of Arterburn's argument that the court should either dismiss the Complaint or stay consideration of the arguments pending the outcome of the Sedgwick County case.

Plaintiffs contends the court should deny both Motions to Dismiss on procedural grounds. Alternatively, plaintiffs contend that if the court considers one or both motions to dismiss on their merits, that the court should exercise its jurisdiction to hear the declaratory judgment because it is capable of efficiently resolving the issues related to insurance coverage without intruding on the state court's determination of liability issues between Eddy's, Terrazas, and Arterburn.

**Analysis**

Plaintiffs argue that Arterburn's first Motion to Dismiss should be denied as moot, because it was filed before plaintiffs filed their First Amended Complaint. Plaintiffs then

argue that Arterburn's Motion to Dismiss the First Amended Complaint should be disregarded because it improperly incorporated arguments by reference from the first Motion to Dismiss, and because Arterburn's reply brief raised additional arguments responsive to plaintiffs' First Amended Complaint that were not present in the original brief.

Arterburn's first Motion to Dismiss is properly denied as moot, both in light of the filing of the First Amended Complaint and in light of the filing of Arterburn's Motion to Dismiss the Amended Complaint. As to the Motion to Dismiss the First Amended Complaint, however, the court finds that a resolution of the issues presented on their merits rather than on technicalities is preferable. The court will accept Arterburn's incorporation by reference of arguments in the first Motion to Dismiss and reply brief associated therewith. While the cases cited by plaintiffs show the court's general disfavor with incorporation by reference, the court finds those cases either distinguishable or inapplicable. The court does not find that Arterburn's incorporation by reference was any attempt to subvert court rules or abuse the briefing process, nor does the court find that Arterburn's incorporation by reference was confusing or difficult to interpret given the relatively few briefs filed in this matter. Instead, Arterburn's attempt to incorporate arguments by reference seems to be an attempt to serve judicial economy. While the briefing could have been handled differently the court has no trouble discerning which arguments were incorporated by reference.  It also appears from the record that plaintiffs were able to adequately respond to all arguments presented. The court consequently finds no basis to disregard the arguments presented in Arterburn's Motion to Dismiss the

First Amended Complaint or the reply brief filed in support of Arterburn's Motion to Dismiss, so it moves to determine those issues on the merits.

Plaintiffs' action is brought pursuant to the federal Declaratory Judgment Act, which provides that any court of the United States "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The court has acknowledged that declaratory judgment actions are appropriate to determine an insurance company's obligation or liability under a policy of insurance. *See Allstate Prop. & Cas. Ins. Co. v. Salazar-Castro*, 2009 WL 997157 at *3 (D. Kan. Apr. 14, 2009) (quoting *Bd. of Cty. Comm'rs of County of Marshall v. Continental Western Ins. Co.*, 184 F.Supp.2d 1117, 1122 (D. Kan. 2001)). In fact, no party here contends that the court generally lacks jurisdiction over the subject matter or parties in this suit.

Where the parties diverge in their arguments is on the question of whether the court *should* exercise its jurisdiction over the case in light of the pending Sedgwick County matter. Even where a lawsuit satisfies jurisdictional prerequisites, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S.Ct. 2137 (1995). A district court's decision to abstain from exercising its declaratory judgment jurisdiction is subject to challenge only if "the district court made a clear error in judgment or exceeded the permissible bounds of choice in its decision to abstain from exercising its jurisdiction." *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168-69 (10th Cir. 1995) (citing *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).

Here, Arterburn urges the court to decline to exercise its jurisdiction because resolution of the Sedgwick County action will necessarily involve consideration of many factual issues that are necessary to resolve the instant declaratory judgment action – including the issues of Terrazas's permission to drive the Tahoe and whether his actions were intentional - and argues that the court's resolution of these factual issues that are simultaneously at play in the Sedgwick County case could create friction between the federal and state court system. The Tenth Circuit has held that a "district court should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989); *see also Cont'l W. Ins. Co. v. Robertson Tank Serv. Inc.*, 2013 WL 1447067 at *2 (D. Kan. Apr. 9, 2013) (quoting *St. Paul Fire & Marine Ins. Co.*, 53 F.3d at 1170).

All parties cite with approval the list of factors approved by the Tenth Circuit which a trial court should consider when deciding whether or not to exercise jurisdiction over a declaratory action: (1) whether the declaratory action would settle the controversy; (2) whether the action would serve a useful purpose to clarify the legal relationships at issue; (3) whether the declaratory remedy is being used merely for "procedural fencing" or as a means to create a race to *res judicata*; (4) whether the declaratory action would increase friction between the federal and state courts or improperly encroach upon state court jurisdiction; and (5) whether there is an alternative remedy that would be better or more effective. *State Farm Fire. & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

One of the "alternative remedies" contemplated by the *Mhoon* court, which the parties do not dispute the court has a right to elect, is a stay of the federal proceedings pending outcome of the state court action. In *Mhoon*, the 10th Circuit suggested that a stay of federal proceedings might be more appropriate in light of ongoing state proceedings on the same subject. *See* 31 F.3d at 984. This court has previously exercised a stay as a remedy where a lawsuit involved key factual issues also before a state court – namely a party's state of mind and whether he was at fault – but certain issues would have remained for consideration in the federal court even after resolution of the state court proceedings. *See Allstate Prop. & Cas. Ins. Co.*, 2009 WL 997157 at *3.

**Application of the *Mhoon* Factors**

The court has an obligation to weigh the five *Mhoon* factors when it determines whether to exercise jurisdiction over a declaratory judgment action, but the Tenth Circuit has recognized those factors can be highly fact-intensive and discretionary. Consequently, the Circuit will not engage in a *de novo* review of the court's decision on appeal but instead "will only ask whether the trial court's assessment of them was so unsatisfactory as to amount to an abuse of discretion." *State Farm Fire & Cas Co. v. Mhoon*, 31 F.3d at 983 (citing *Duggins v. Hunt*, 323 F.2d 746 (10th Cir. 1963); *Kunkel*, 866 F.2d at 1273).

The first two *Mhoon* factors ask whether a declaratory judgment would settle the controversy, and whether it would clarify the legal relationships at issue. "Courts have recognized that because an insurer has a duty to defend, as well as a duty to conduct settlement negotiations and to pay any settlement amount or judgment entered against

its insured, a declaratory judgment action is appropriate to clarify legal relationships prior to final adjudication of an underlying action." *Allstate Prop. & Cas. Ins. Co.*, 2009 WL 997157 at *1 (citing *Kunkel*, 866 F.2d at 1275; *Horace Mann Ins. Co. v. Johnson,* 953 F.2d 575, 578 (10th Cir.1991) (expressing discomfort with the idea that parties should have "to wait until the tort victim attempt[s] to collect his or her judgment from the insurance carrier to litigate [insurance] coverage issues"). The court has previously found in declaratory judgment actions involving insurance coverage that the first two *Mhoon* factors favor the exercise of jurisdiction. *See Allstate Prop. & Cas. Ins. Co.,* 2009 WL 997157 at *1 ("A declaration by this court relating to the coverage issues presented will clarify the parties' legal relations and resolve uncertainty surrounding plaintiff's obligations.").

As to the issues presented to the court in this declaratory judgment, court finds the first and second *Mhoon* factors likewise favor continuing with the declaratory judgment action. Plaintiffs' First Amended Complaint asks the court to determine that Terrazas is not covered under either of the insurance policies issued by plaintiffs to Eddy's that might have otherwise provided coverage for the Tahoe on the date in question. If the action were decided in plaintiffs' favor, plaintiffs would have no duty to defend Terrazas in the underlying suit and no duty to indemnify him for any damages for which he may ultimately be held liable. That decision would certainly clarify plaintiffs' legal obligations to both Terrazas and Arterburn, and would settle the controversy as to the issue of whether the insurance policies provide any applicable coverage. Consequently, the first two *Mhoon* factors favor plaintiffs.

The third *Mhoon* factor asks the court to determine whether the declaratory judgment is being used merely for purposes of procedural fencing or to provide an arena for *res judicata*. To determine "whether the declaratory judgment action is being used in order to gain a procedural advantage, the court considers the timeliness of the actions at issue." *Allstate Prop. & Cas. Ins. Co.*, 2009 WL 997157, at *2 (quoting *Ortiz v. Biscanin*, 190 F.Supp.2d 1237, 1246 (D.Kan.2002) (quoting *Bd. of County Comm'rs*, 184 F.Supp.2d at 1121)) (internal quotation marks omitted). In *Allstate*, the court found this factor to be neutral when the plaintiff insurers filed their declaratory judgment action after the defendants had made demands, but before the defendants had filed a tort action in state court. Under those circumstances, the court found the coverage issues to be distinct from the damage and liability issues presented in the state tort action, and found that the record did not reflect any sort of "procedural fencing."

In this case, the Second Amended Complaint in Arterburn's state tort action was filed on February 5, 2019. (Dkt. 15-1). Eddy's filed an Answer to the Second Amended Complaint on February 19, 2019 (Dkt. 15-3), which denied that Terrazas had permission to use the Tahoe and argued that Terrazas's conduct was intentional, rather than negligent. The Answer contained a cross-claim against defendant Terrazas brought pursuant to the Kansas Declaratory Judgment Act, K.S.A. 60-1701 et seq. The cross-claim sought a judgment from the Sedgwick County court that Terrazas's conduct on February 7, 2017 was either intentional or personal such that Eddy's could not be held liable for negligent entrustment of the Tahoe to Terrazas. Arterburn filed a motion to strike the cross-claim on March 18, 2019 (Dkt. 18-2) which noted that Eddy's defense was being

11

provided by Zurich and that the theory of negligent entrustment advanced in the Second Amended Complaint would make Terrazas an insured under the insurance policy issued by Zurich to Eddy's (the same primary policy of insurance at issue in this case). The motion to strike argued that Zurich was essentially seeking a declaratory judgment concerning its obligation to provide insurance coverage to Terrazas under the guise of Eddy's cross-claim. In response to the motion to strike (Dkt. 18-2), Eddy's admitted the cross-claim was a declaratory judgment that would effectively end the case as to Eddy's because a determination that Terrazas acted intentionally would resolve the controversy as to Eddy's responsibility. But, Eddy's argued, the result was proper because Terrazas's guilty plea in state court conclusively established that his conduct was intentional. The Sedgwick County court held a hearing on the matter and ruled in Arterburn's favor, striking the cross-claim on April 9, 2019. (Dkt. 15-4). Subsequently, an entry of appearance was filed in Sedgwick County on behalf of Terrazas on April 30, 2019 (Dkt. 15-5) which, given the information provided to this court, was due to Zurich's election to defend Terrazas under a reservation of rights.

Given that background, it is clear that Zurich was well aware of the nature of Arterburn's claims against Eddy's and Terrazas by at least February 5, 2019 and was aware that if Terrazas's conduct was found to be either impermissible or intentional, that Zurich would not be obligated to provide insurance coverage on Terrazas's behalf. Such a declaration was the subject of Eddy's cross-claim against Terrazas, which Zurich admitted would have effectively ended the state court litigation. Nevertheless, plaintiffs waited until October 15, 2019 to file a complaint in this court that seeks substantially the

same relief Eddy's sought in its cross-claim against Terrazas in Sedgwick County (albeit through a different legal mechanism). While plaintiffs are within their rights to file the declaratory judgment action on the issues of insurance coverage, given the timing of the events and the delay of time between plaintiffs' knowledge of the basis of their declaratory judgment claim and their decision to file the federal complaint, reasonable observers could conclude the federal action was filed as some type of gamesmanship or attempt to win a procedural advantage by allowing plaintiffs to obtain the type of relief in federal court that they were previously denied by the state court. The court concludes, then, that the third *Mhoon* factor weighs slightly in favor of a decision to dismiss or stay the declaratory judgment.

The fourth *Mhoon* factor asks the court to consider whether a decision to exercise jurisdiction over the declaratory judgment would increase friction between the federal and state courts or improperly encroach upon the state court's jurisdiction. The court has previously determined this to be the "most significant" factor in a similar case involving fact-intensive determinations of who was at fault and whether that individual acted negligently or intentionally. *See Allstate Prop. & Cas. Ins. Co.*, 2009 WL 997157 at *2. In *Allstate*, the court observed that the issues of who was at fault and whether that individual acted intentionally were not "sham" fact issues, and that although there was a slight difference in the way the issues were framed, the District Court's determination of the issues could well encroach upon the state court's jurisdiction and cause friction between the two. The court further noted that in the state court action, the parties had an opportunity to fully litigate the issues of fault and intent. Moreover, the defendant-actor

13

in that case, like Terrazas here, was represented in the state court action and actively defending himself, whereas he was unrepresented in the federal court action, had not appeared, and had default entered against him. Ultimately the court found "to enter default judgment against defendant … in a case presenting factual issues that are also being determined in state court – and in a case where defendant … has also appeared – would cause friction between federal and state courts." *Id.* at *2.

The court finds that an exercise of jurisdiction here would similarly cause friction between federal and state courts. Plaintiffs stress that a decision in the Sedgwick County court determining whether Terrazas acted intentionally or negligently (as determined under tort standards) and whether Eddy's and other defendants were responsible for providing Terrazas with the vehicle that injured Officer Arterburn would not resolve the insurance coverage question. Plaintiffs further assert that a decision that Terrazas acted negligently in a tort action is determined under a different legal standard than this court would apply to determine whether he acted negligently or intentionally for purposes of insurance coverage. While the applicable legal standards may be marginally different, plaintiffs cannot avoid the substantial overlap of the factual issues presented.

Plaintiffs argue that they are not obligated to provide insurance coverage to Terrazas in part because he was not a permissive user of the vehicle, that he significantly deviated from any permissive use of the vehicle, and that his conduct in driving the vehicle into Officer Arterburn was intentional rather than accidental. Resolving those issues could require this court to determine, at a minimum, how and when Terrazas came into possession of the Tahoe, the purpose of his possession of the Tahoe, whether there

were any communications from Eddy's or its employees with Terrazas about his permission to use the Tahoe, the content and timing of those communications, and the precise scope of any permission given. Despite plaintiffs' assertion that the court could conclude Terrazas's conduct was intentional simply by virtue of his criminal plea agreement or the egregious nature of his conduct as a known drug offender engaged in a high-speed chase with police, the court finds that in order to declare Terrazas's conduct in hitting Officer Arterburn intentional for purposes of the insurance policy at issue it would need to determine precisely how the injury occurred and the detailed circumstances of Terrazas's conduct in operating the vehicle at that exact moment in time.

These are all fact-intensive issues; not only have they been the subject of extensive discovery in the Sedgwick County matter, but a Sedgwick County jury is poised to answer those inquiries in October 2020. If this court were to determine that Terrazas was acting without permission in his use of the vehicle or that his conduct was intentional, rather than negligent, those findings could conflict with the result a jury might return in the matter. Not only would that subject the parties to inconsistent results, but it creates a substantial possibility of friction between the state and federal court systems.

The presence of issues in the declaratory judgment that are not present in the state court action – namely, whether Terrazas cooperated in his defense and whether he qualified as an insured under the secondary umbrella policy issued by American – do not resolve or outweigh the potential tension between state and federal courts as to the fact-intensive issues of permissive use and intent. The fact that the court could conceivably resolve the question of cooperation or contractual interpretation without intruding upon

the state court's determination of other fact-intensive issues does not sway this court towards exercising jurisdiction over the entire matter at the risk of creating inconsistent results or friction between the state and federal court. The court concludes that the fourth *Mhoon* factor weighs significantly in favor of a decision to decline jurisdiction or stay the matter.

The fifth and final *Mhoon* factor asks the court to determine whether an alternative remedy would be better or more effective at resolving the issues in the case. To be sure, the declaratory judgment sought by plaintiffs would effectively resolve the coverage issues at dispute in the matter, and would conclusively determine that plaintiffs were not obligated to participate in the defense or indemnification of Terrazas in the state court matter. If the state court matter is allowed to proceed to trial before this action is decided, it is possible plaintiffs may provide that defense to Terrazas only to have a jury determine that Terrazas had no permission operate the vehicle at the time in question or that Terrazas acted intentionally rather than negligently. The court finds that this danger, however, is substantially outweighed by the fourth *Mhoon* factor.

Further, the court finds that there is an alternative remedy available – a stay of this action – that would be preferable. A stay of this declaratory judgment pending the outcome of the Sedgwick County case would allow for full and fair litigation of the factual issues presented while allowing this court to retain and exercise jurisdiction over the coverage disputes that have been properly presented. Because a better alternative is available to the court, the court finds the fifth *Mhoon* factor weighs in favor of Arterburn.

Although the parties disagree as to whether a stay is appropriate here, neither party disputes the court has the ultimate authority to issue a stay of the declaratory judgment action in lieu of declining to exercise jurisdiction. *See Mhoon*, 31 F.3d at 984 (suggesting that a stay, rather than dismissal, may be appropriate where a factual dispute exists and a state court proceeding involves the same subject). If "issues would remain to be decided in light of the outcome of the state case," dismissal of an action is not required. *Id.*

Here, plaintiffs have correctly noted that the declaratory judgment action encompasses issues that would not be decided by the state court action – whether Terrazas cooperated in his defense (although the court notes that this issue may be somewhat factually informed by Terrazas's actions in the state court matter), and whether Terrazas qualified as an insured under the secondary policy. In light of those issues that may remain after the Sedgwick County suit is resolved, the court finds that a stay of this litigation is the most appropriate result. *See Allstate*, 2009 WL 997157 at *3 (finding that a stay of proceedings pending resolution of the underlying state court lawsuit was appropriate in light of the state court's determination of key factual issues as to whether an individual was at fault and his state of mind at the time of the accident).

**Conclusion**

Declaratory judgment would typically be an appropriate remedy to determine an insured's rights and obligations pursuant to an insurance policy. The parties do not dispute the court's jurisdiction and authority to hear the dispute at issue here, whether plaintiffs have an obligation to provide coverage to Terrazas given the defenses to

coverage raised in their Amended Complaint. It is well-established that the court has the discretionary authority to decline to exercise its jurisdiction in the event that it finds an exercise of jurisdiction would be inappropriate. After consideration of the factors established to guide the court's determination in that regard, the court finds that there is significant potential for conflict between the state and federal courts in light of the concurrent Sedgwick County lawsuit and the substantial overlap of fact-intensive issues between the declaratory judgment and state court litigation. In light of that conflict, and in light of the court's analysis of the other *Mhoon* factors, the court determines that a stay of the declaratory judgment action until the Sedgwick County litigation is resolved is appropriate.

Defendant Arterburn's Motion to Dismiss or Stay the First Amended Complaint (Dkt. 23) is consequently GRANTED in part, and DENIED in part. Defendant Arterburn's Motion to Dismiss (Dkt. 14) is DENIED as moot. This matter is STAYED pending the outcome of *Arterburn et al. v. Eddy's Chevrolet/Cadillac et al.*, Sedgwick County, Kansas Case No. 2018-cv-683-TC. The parties shall notify this court of any resolution of that case on its merits within five business days.

IT IS SO ORDERED.

Dated this 2nd day of June, 2020.

/s/ ____ J. Thomas Marten ____
THE HONORABLE J. THOMAS MARTEN
UNITED STATES DISTRICT COURT