IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ZURICH AMERICAN INSURANCE )
COMPANY and )
AMERICAN GUARANTEE AND )
LIABILITY INSURANCE COMPANY, )
 )
                Plaintiffs, )
 )
v. )    Case No. 19-1275-JWL
 )
JUSTIN F. TERRAZAS and )
CLAUDALE M. ARTERBURN as Guardian )
and Conservator of Brian D. Arterburn, )
 )
                Defendants. )
 )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on cross-motions for summary judgment filed by plaintiffs (Doc. # 64) and defendant Claudale Arterburn (Doc. # 72) on the issue of the alleged breach of the relevant insurance policies' cooperation clauses. For the reasons set forth below, the Court **denies** both motions.

### I.    Background

This insurance coverage dispute arises from an occurrence on February 7, 2017, in which a vehicle driven by Justin Terrazas struck Officer Brian Arterburn during a police pursuit. The vehicle had been reported stolen by its owner, Eddy's Toyota of Wichita, Inc.

("Eddy's Toyota"). Mr. Terrazas was convicted of various crimes, including a drug offense and offenses related to the pursuit, and he presently remains incarcerated.

Claudale Arterburn, spouse of Brian Arterburn, who was seriously injured by Mr. Terrazas, initiated a lawsuit on his behalf against Eddy's Toyota and Mr. Terrazas in the District Court of Sedgwick County, Kansas. Zurich American Insurance Company ("Zurich") and American Guarantee and Liability Insurance Company ("American") had issued insurance policies to Eddy's Toyota, and Zurich, under a reservation of rights, retained counsel to represent Mr. Terrazas in the Sedgwick County suit.

In October 2019, Zurich and American filed the present suit against Mr. Terrazas and Mrs. Arterburn, by which Zurich and American seek a declaration to the effect that they have no duty to defend or indemnify Mr. Terrazas under the policies issued to Eddy's Toyota. Default has been entered against Mr. Terrazas, who has not responded to the suit. On June 2, 2020, the Court stayed the case pending the resolution of the Sedgwick County case, in light of factual issues in that case that would be relevant to the present action, including whether Mr. Terrazas was a permissive user of the vehicle owned by Eddy's Toyota and whether Mr. Terrazas struck Mr. Arterburn intentionally.[1] On October 8, 2020, the Court modified the stay order and lifted the stay to allow discovery and motion practice with respect to the single issue of whether any duty of plaintiff insurers to defend and indemnify Mr. Terrazas was relieved by Mr. Terrazas's breach of the policies' cooperation

---

[1] It appears that the trial in the Sedgwick County case has not yet taken place, although the parties' briefs on the present motions do not mention the present status of that litigation.

clauses. The parties proceeded to conduct discovery, and insurers and Mrs. Arterburn have now filed cross-motions for summary judgment on the issue.[2]

## II.  **Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *See id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *See id.* (citing *Celotex*, 477 U.S. at 325).

---

[2] The present case was reassigned to the undersigned judge on April 19, 2021.

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *See Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *See Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *See Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. Analysis

Plaintiff insurers claim that Mr. Terrazas (assuming that he is deemed an insured under the policies) breached the policies' cooperation clauses and that such breach relieves them of any obligation to defend or indemnify him in the underlying suit. Zurich's policy required any insured to "[c]ooperate with [Zurich] in the investigation or settlement of the claim or defense against the suit [seeking damages for which the policy provides coverage]." Similarly, American's policy required any insured to "[c]ooperate with [American] in the investigation, settlement or defense of the claim or suit."

The purpose of a cooperation clause "is to protect the insurer's interest and prevent collusion between the insured and the injured person." *See Geer v. Eby*, 309 Kan. 182, 193

4

(2019) (quoting *Watson v. Jones*, 227 Kan. 862, 866-67 (1980)).[3] "Where an insurer seeks to avoid liability under its policy for failure of the assured to cooperate as required by a condition of the policy, the burden is on the insurer to establish the facts which bring the case within the specified condition in the policy." *See Watson*, 227 Kan. at 867.

"In order to prevail on defense of noncooperation, the insurer must show, by a preponderance of evidence, an unreasonable and willful pattern of refusing to answer material and relevant questions…." *See Evergreen Recycle, L.L.C. v. Indiana Lumbermens Mutual Ins. Co.*, 51 Kan. App. 2d 459, 495-96 (2015) (quoting 14 *Couch on Insurance 3d* § 199:39 (2014)); *see also Watson*, 227 Kan. at 870 (insurer had to show that the insured willfully failed and refused to cooperate by appearing and testifying at trial). Moreover, the insurer must show that it exercised reasonable diligence and good faith in attempting to secure the insured's cooperation, and that requirement ordinarily presents a question of fact. *See Watson*, 227 Kan. at 870. "When an insurer determines that it needs specific information from the insured and that the information is not forthcoming, it should specify in writing the information needed and advise the insured of the consequences of its failure to provide it." *See Evergreen*, 51 Kan. App. 2d at 496 (quoting 14 *Couch 3d* § 199:39).

"Breach of a cooperation clause in a liability insurance policy does not by itself relieve an insurer of responsibility. The breach must cause substantial prejudice to the

---

[3] The parties appear to agree that Kansas law governs this issue arising from policies issued to a Kansas insured. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (in a diversity action, the court applies the forum state's choice-of-law rules); *Safeco Ins. Co. of Am. v. Allen*, 262 Kan. 811, 822 (1997) ("Kansas follows the general rule that the law of the state where the insurance contract is made controls.").

insurer's ability to defend itself." *See Boone v. Lowry*, 8 Kan. App. 2d 293, 299 (1983) (citing, *inter alia*, *Jameson v. Farmers Mutual Auto. Ins. Co.*, 181 Kan. 120, 127 (1957)).

> An insurer's burden of showing prejudice from a breach of a cooperation clause by the insured is not sustained by a showing of possible prejudice. The insurer must establish at the very least that if the cooperation clause had not been breached there was a substantial likelihood that the trier of fact, in an action against the insured, would have found in the insured's favor.

*See id.* at 302.

In discovery in the underlying action, Mr. Terrazas has responded to questions about how he acquired the vehicle owned by Eddy's Toyota by invoking the Fifth Amendment's protection against self-incrimination. Insurers claim in this action that Mr. Terrazas breached the cooperation clauses by refusing to tell them such details. Insurers also appear to claim that Mr. Terrazas's invocation of the Fifth Amendment itself constitutes a breach. In opposing summary judgment, Mrs. Afterburn does not dispute that such an invocation may constitute a lack of cooperation. *See, e.g.*, *Aetna Cas. & Surety Co. v. State Farm Mutual Auto. Ins. Co.*, 771 F. Supp. 704, 707-08 (W.D. Penn. 1991) (rejecting argument that invocation of Fifth Amendment may not constitute breach of a cooperation clause as a matter of law), *aff'd*, 961 F.2d 207 (3d Cir. 1992). Insurers further argue that they have suffered substantial prejudice from the breach both in the underlying suit against Mr. Terrazas and with respect to the issue of coverage. Mrs. Arterburn has not argued or provided authority to suggest that the requisite prejudice may not relate to the coverage dispute instead of to the suit against the insured.[4]

---

[4] In addition, Mrs. Arterburn has not argued that the claimed instances of noncooperation do not fall within the scope of the policies' cooperation clauses.

6

Applying this law, the Court concludes that this claim of a breach of the cooperation clauses cannot be decided at this time as a matter of law in favor of either side. Both motions for summary judgment must therefore be denied.

First, the prejudice to plaintiff insurers from the alleged breaches depends on factual issues being litigated in the underlying suit in state court. Insurers argue that the defense of Mr. Terrazas in that suit could be prejudiced by his invocation of the Fifth Amendment at trial; insurers' theory is that the state court could permit the jury to draw an adverse inference against Mr. Terrazas from his invocation, and that the jury might then hold the inferred theft of the vehicle against Mr. Terrazas in deciding his liability for the injuries to Mr. Arterburn. Whether that occurs, however, can only be known after the trial in that case. The amount of any such prejudice necessarily depends on the totality of the evidence offered at trial and the result – indeed, if the jury finds in favor of Mr. Terrazas, the invocation of the Fifth Amendment cannot have caused substantial prejudice to insurers with respect to the defense of Mr. Terrazas. This issue can be properly decided only after resolution of the state court case.[5] Moreover, even after that time, the degree of prejudice may present a question of fact and thus may not be able to be resolved as a matter of law before trial in the instant case. *See Aetna*, 771 F. Supp. at 709 (prejudice from invocation of privilege is "quintessentially a question of fact").

---

[5] The Court lifted the stay with respect to this issue because of the possibility the issue would not depend upon resolution of the underlying action. The present motions make clear, however, that the noncooperation claim is indeed intertwined with the factual issues to be decided in the other case.

The same is true for insurers' claim of prejudice with respect to the coverage issue that has allegedly arisen from Mr. Terrazas's refusal to tell them how he acquired the vehicle. Insurers insist that they need such information to determine whether Mr. Terrazas could be covered under the policies as a permissive user of the vehicle, and they note that they are incurring costs in defending Mr. Terrazas in the meantime. Such prejudice could not exist, however, unless Mr. Terrazas in fact was *not* a permissive user and was withholding that information from insurers. That uncertainty concerning the withheld information distinguishes this case from the usual case of noncooperation in which the insured has failed to provide particular information that has become known.

Thus, to establish prejudice insurers must be able to show that Mr. Terrazas was not a permissive user. Insurers cite Mr. Terrazas's answer to Mrs. Arterburn's interrogatory in the other case asking whether Mr. Terrazas believed he had the permission of Eddy's Toyota to use the vehicle. Mr. Terrazas initially declined to answer under the Fifth Amendment, but after the state court determined that he could answer the question without self-incrimination, he answered, "No." The issue of permissive use, however, is disputed and will be resolved at trial in Sedgwick County.[6] Mrs. Arterburn cites contrary evidence on the question, including the following: Mr. Terrazas also answered in the negative when asked in an interrogatory whether he stole the vehicle from Eddy's Toyota; Mr. Terrazas indicated in a telephone call recorded at his prison that he was aided in obtaining the vehicle by a certain employee of Eddy's Toyota; Mr. Terrazas was using the vehicle's spare key;

---

[6] In the state court case, Mrs. Arterburn claims that Eddy's Toyota negligently entrusted the vehicle to Mr. Terrazas.

the dealership knew that the vehicle and the spare key were missing in December 2016, but it did not report the vehicle stolen until police officers, who had been surveilling the vehicle, asked about the vehicle in February 2017; and in answering interrogatories in the state court case, Eddy's Toyota stated that it still had not formed a clear understanding about what had happened to its vehicle. Thus, this issue of prejudice is also intertwined with factual matters to be addressed in the state court case.

Insurers argue that they have suffered prejudice if Mr. Terrazas could have changed the outcome by cooperating. It is true that things could have changed with respect to the coverage issue *if* Mr. Terrazas told a certain story (i.e., he was not a permissive user); but whether that particular story is the right one remains in dispute, and thus the issue of prejudice also remains in dispute and cannot be decided on summary judgment.[7]

The Court further concludes that fact issues preclude summary judgment with respect to Mr. Terrazas's alleged breach in refusing to provide information to insurers, specifically with respect to whether insurers diligently sought the information from Mr. Terrazas and whether any refusal by Mr. Terrazas was repeated, unreasonable, and willful. *See Watson*, 227 Kan. at 870 (insurer's diligence ordinarily presents a question of fact for

---

[7] Insurers cite *American Country Insurance Co. v. Bruhn*, 682 N.E.2d 366 (Ill. Ct. App. 1997). In that case, the court rejected the argument that the insurer had to establish prejudice to deny coverage based on a lack of cooperation; noted that the insurer could not know how it was prejudiced if the insured refused to give a statement; and stated that under Illinois law a violation of the cooperation provision is patent when the insured completely refuses to communicate with the insurer. *See id.* at 372. Contrary to insurers' suggestion here, however, the court in *Bruhn* did not state that *prejudice* was patent there; rather it concluded that a showing of prejudice was not necessary in that situation under Illinois law. No such exception to the prejudice requirement has been recognized under Kansas law.

9

the jury). Insurers note that, in response to requests for admission, Mr. Terrazas has admitted that he has refused to answer how he obtained the vehicle, that he has not disclosed to insurers how he obtained it, and that he has asserted the Fifth Amendment when asked about it since the occurrence. That evidence, viewed in the light most favorable to insurers, could establish a lack of cooperation in the eyes of a reasonable factfinder. As Mrs. Arterburn notes, however, the admissions do not clarify that insurers did the asking. In fact, in response to an interrogatory, insurers were unable to identify an instance in which it requested a recorded statement from Mr. Terrazas, and insurers have not established the extent to which they made requests for information directly to Mr. Terrazas. Thus, when viewed in the light most favorable to Mrs. Arterburn, the evidence does not establish insurers' diligence or an unreasonable pattern of refusal as a matter of law.

Similarly, a question of fact remains for trial in this case concerning whether Mr. Terrazas's invocation of the Fifth Amendment has been willful or unreasonable or whether it constitutes a breach of the duty to cooperate. In arguing that invocation of the Fifth Amendment may constitute noncooperation, insurers cite *American Family Insurance Co. v. Almassud*, 413 F. Supp. 3d 1292 (N.D. Ga. 2019). In that case, however, the court concluded that the issue could not be decided as a matter of law upon summary judgment because questions of fact remained concerning whether the insured "failed to cooperate with [the insurer] by pleading the Fifth or that, assuming he did fail to cooperate, that failure was willful or intentional." *See id.* at 1306. The same is true here. Accordingly, the Court

10

denies both motions for summary judgment on the claim of a breach of the cooperation clauses.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion for summary judgment (Doc. # 64) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT defendant Claudale Arterburn's motion for summary judgment (Doc. # 72) is hereby **denied**.

IT IS SO ORDERED.

Dated this 21st day of July, 2021, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge
